**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

September 22, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Michael G. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-1707-DRM

Dear Counsel:

On May 29, 2025, Plaintiff Michael G. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 11, 13 and 14). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on February 3, 2022, alleging a disability onset of February 20, 2020. Tr. 14. Plaintiff's claims were denied initially and on reconsideration. Tr. 14. On October 24, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 14. Following the hearing, on March 21, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 24. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 20, 2020, the alleged onset date." Tr. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "focal onset seizures with secondary generalization also referred to as localization-related (focal) (partial) symptomatic epilepsy and epileptic syndromes with complex partial seizures, intractable, with status epilepticus." Tr. 17 (record citations omitted). The ALJ also determined that Plaintiff suffered from the non-severe impairments of "anxiety disorder due to a medical condition, depressive disorder, and mood disorder, not otherwise specified." Tr. 17. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 18. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. He can balance on even surfaces and can stand and walk on level terrain. He cannot perform work involving driving motor vehicles such as forklifts, trucks, and automobiles, and cannot work within close proximity to unprotected heights, hazardous machinery, extreme cold and extreme hot. He is capable of understanding, remembering, and carrying out detailed but not complex instructions on a regular and sustained basis to complete a normal workday and week.

Tr. 19. At steps four and five, the ALJ determined that Plaintiff was unable to perform past relevant work as an assistant professor and general physician, but he could perform other jobs that existed in significant numbers in the national economy such as office helper, marker, sorter I, table worker, and lens inserter. Tr. 23-24. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 24.

## III. <u>LEGAL STANDARD</u>

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review

of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff raises one argument on appeal, specifically that the ALJ "failed to adequately review whether [Plaintiff] meets the requirements of Listing 11.02(B) when evaluating [his] Epilepsy," such that "it cannot be determined that [the ALJ's decision] was based on substantial evidence." ECF No. 11 at 7. Plaintiff argues that the ALJ's discussion of the paragraph B Listing is limited to restating the criteria and a conclusion that Plaintiff did not meet the listing criteria because the record does not include the required detailed description of the specified type of seizure by a witness who observed that type of seizure, and cites to only one medical exhibit. ECF No. 11 at 7, 9. Plaintiff adds the ALJ's analysis does not include any discussion of a three-day EEG test during a January 2020 hospital admission in which an EEG recorded that Plaintiff experienced 15 separate seizure events and described them in detail. ECF No. 11 at 9. Finally, Plaintiff argues that the term "dyscognitive seizure" "is not currently a widely used medical diagnosis" outside of SSA regulations, and that this likely explains why it does not appear in his medical records notwithstanding that his "seizures are consistent with the definition [of 'dyscognitive'] provided by SSA at 11.00(H)(1)(b)." ECF No. 11 at 10.

Defendant counters that "Plaintiff was not specifically diagnosed with this type of seizure, and crucially 'the file does not include a detailed description of this type of seizure from a witness who observed this type of seizure,'" as required to meet Listing 11.02(B). ECF No. 13 at 7. Defendant argues that "[t]he ALJ bolstered her analysis by explaining that the electroencephalogram (EEG) performed in January 2020 'indicated that there was hyper-motor activity, at times, brief and with little to no postictal confusion.'" ECF No. 13 at 7. Defendant contends that the January 2020 "EEG did not reflect dyscognitive seizures at all." ECF No. 13 at 9. Defendant adds "that in March and May 2020, Angela Wabulya, M.D. – the same doctor who performed the EEG in January 2020 (Tr. 444) – explained that Plaintiff described his seizures as being 'without altered awareness' and lasting three to five seconds," and "Dr. Wabulya agreed, noting that the video EEG 'was consistent with this.'" ECF No. 13 at 8. Defendant concludes: "[c]onsidering that a fundamental requirement of a dyscognitive seizure is that there be an 'alteration of consciousness,' the fact that the only actual witness that provided any description whatsoever of Plaintiff's seizures specifically noted that there was 'no altered awareness' dooms Plaintiff's claim that these were the type of dyscognitive seizures contemplated by 11.00H1b and 11.02B." ECF No. 13 at 8.

In reply, Plaintiff reiterates that the "ALJ did little more than restate the criteria of Listing 11.02(B) and then conclude that [Plaintiff] did not meet said criteria," and adds that Defendant's arguments are an "interpretation of the medical evidence amounting to a post-hoc rationalization of the ALJ's reasoning which the ALJ, herself, did not provide." ECF No. 14 at 2, 4. Plaintiff responds that three medical professionals reviewed Plaintiff's January 2020 EEG results, Dr. David Nacionales, who administered the EEG and concluded, "[t]his EEG is consistent with likely focal onset seizures"; a nurse practitioner, who diagnosed "partial idiopathic epilepsy and seizures of localized onset, intractable"; and Dr. Wabulya, who wrote that she "saw and evaluated this

patient," and added that she "reviewed" the nurse practitioner's note and "agree[d] with the findings and the plan." ECF No. 14 at 2. Plaintiff concludes that this disagreement about evidence is precisely the discussion in which the ALJ did not engage because the ALJ did not discuss the type, frequency, severity, or descriptions of the seizures, or the doctors' conclusions. ECF No. 14 at 5.

The SSA Regulations' "Listing of Impairments" describes, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. "Within each listing, we specify the objective medical and other findings needed to satisfy the criteria of that listing. We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3). At step three of the sequential evaluation process, an ALJ determines whether a claimant has an "impairment[] which meets or equals" a listed impairment (a "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the agency will find that the claimant is disabled. *Id*.

An ALJ's task in evaluating whether a Plaintiff meets or equals a Listing, and the Court's task in reviewing that evaluation, are governed by the following principles: First, "if the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a listing, the ALJ must discuss the relevant listing and provide a coherent explanation regarding whether the claimant's impairments meet or equal it." *Angela C. v. Kijakazi*, No. TJS-21-0349, 2022 WL 601098, at *2 (D. Md. Mar. 1, 2022) (quoting *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013)). Because "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling" as to why a claimant does not meet or equal a Listing, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (citations omitted).

Accordingly, "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 295 (citations omitted); *see Fox v. Colvin*, 632 F. App'x. 750, 755–56 (4th Cir. 2015) (remanding due to "conclusory" and "perfunctory" step-three analysis).

However, while "the ALJ is compelled to provide a coherent basis for his step-three determination," a reviewing court "must read the ALJ's decision as a whole," and therefore "an ALJ's step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). *See Smith v. Astrue,* 457 F. App'x 326, 328 (4th Cir. 2011) (despite ALJ's "cursory" explanation of step-three finding, it was supported by substantial evidence based on the ALJ's decision as a whole).

Said another way, even if the ALJ's explicit step-three analysis would be deficient standing alone, remand will not be required "where it is clear from the record which listing or listings . . .

were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002).

Nonetheless, if "the ALJ's failure to adequately explain his reasoning precludes . . . the district court from undertaking a 'meaningful review' of the finding that [a plaintiff] did not satisfy [a] Listing," *Radford,* 734 F.3d at 296, it is "not the province of [the] Court to cobble together a meaningful explanation for a determination that a Listing has not been not satisfied." *Figgs v. Saul,* No. JMC-20-0334, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021) (citing *Radford,* 734 F.3d at 296).

Plaintiff challenges the ALJ's determination that he did not meet or equal Listing 11.02, "Epilepsy." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. The criteria relevant to meeting or equaling Listing 11.02 is delineated in four sections referred to as Paragraphs A-D; a claimant can meet or equal Listing 11.02 by satisfying any one or more of these Paragraphs.

Specifically, Plaintiff challenges the ALJ's analysis of the Paragraph B criteria for this Listing, which reads in relevant part, "Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B (internal citations omitted).

Section 11.00H provides further guidance about how the agency defines epilepsy and how it will evaluate a claim.

> b. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure.
>
> . . .
>
> 2. We require at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures. If you experience more than one type of seizure, we require a description of each type.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.00H1b, 11.00H2 (internal citation omitted).

The ALJ analyzed the Paragraph B criteria for Listing 11.02B as follows:

> (B) Dyscognitive seizures (characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of

> facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur at least once a week for at least three consecutive months despite adherence to prescribed treatment. The claimant described dyscognitive seizures at the hearing, but he has not been diagnosed with this type of seizure, and the file does not include a detailed description of this type of seizure from a witness who observed this type of seizure. EEG findings indicated that there was hyper-motor activity, at times, brief and with little or no postictal confusion (11F/56).
>
> …
>
> The record does not establish the medical signs, symptoms, laboratory findings, or the degree of functional limitation required to meet or equal the criteria of any listed impairment. An acceptable medical source designated to make equivalency findings has not concluded that the claimant's impairments medically equal a listed impairment.

Tr. 18-19. Standing alone, this is a conclusory analysis without explanation of its reasoning or the underlying evidence. The ALJ cites to page 56 of Exhibit 11F but does not discuss it. That page is the final page of the "preliminary" report from the three-day hospital admission in January 2020, with a notation from David Nacionales, DO, providing a summary, a clinical interpretation, and a final note that states, "This is a preliminary EEG report. Finalized report pending review by attending physician, Dr. Wabulya." Tr. 484.

The full report of the January 2020 EEG testing at issue, however, contains more information. The January 2020 test took place during a hospital admission from January 19 through January 22, 2020. Tr. 480. The testing was conducted by a "[c]ontinuous EEG with simultaneous video recording," which was performed "utilizing 21 electrodes." Tr. 481. The study was "recorded digitally" and "digitally processed" with "potential spike and seizure events identified for physician analysis and review." Tr. 481. Further, "[p]atient recognized events were identified by a push button marker." Tr. 481. Finally, "[s]imultaneous video was reviewed for all patient events." Tr. 481. The record then describes 15 seizure events over those three days. Tr. 481-484. Plaintiff's aspect during these events is described variously as "awake" and responsive to medical staff, Tr. 481-482, to "mildly confused," Tr. 483, and "unresponsive." Tr. 482-483.

The test results were reviewed by at least two medical professionals. Dr. Nacionales signed the "preliminary" report, dated January 23, 2020, and added the notation "[f]inalized report pending review by attending physician, Dr. Wabulya." Tr. 480, 484. Dr. Wabulya signed a report dated January 24, 2020, and noted, in part, "I saw and evaluated the patient, participating in key portions of the service." Tr. 444. A later report by Dr. Wabulya, dated May 21, 2020, notes Plaintiff's "seizures *mainly* include throat discomfort +/- salivation *without altered awareness* lasting 3-5 seconds with the initial semiology suggesting peri-sylvian/insular seizures." Tr. 435 (emphasis added). It is not clear what aspect of the description the word "mainly" modified.

On its face, it appears the report of the January 2020 EEG tests may meet some or all of the requirements of §§ 11.00H1b and 11.00H2, which require that the claimant have a "dyscognitive" seizure, and provide "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures." Without more detailed analysis about how and why this record evidence does not meet the requirements of §§ 11.00H1b and 11.00H2, except the ALJ's statement, "EEG findings indicated that there was hyper-motor activity, at times, brief and with little or no postictal confusion," Tr. 19, the Court is unable to follow the ALJs reasoning.

However, the Court must also look to the rest of the ALJ's decision to determine if it contains an "equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion." *Schoofield*, 220 F. Supp. 2d at 522; *see Keene*, 732 F. App'x at 177. In doing so, the Court focuses on Plaintiff's argument, that the ALJ's failed to discuss how the January 2020 EEG tests and results affected the analysis of whether Plaintiff met the requirements of Listing 11.02B as articulated in §§ 11.00H1b, 11.00H2.

The ALJ discusses Plaintiff's seizures throughout the following section of the decision, in which the ALJ cites Exhibit 11F in several places. Tr. 20-21. The ALJ does not, however, analyze the January 2020 EEG testing and results in that section. The ALJ notes that, "[t]he claimant has localization-related (focal) (partial) symptomatic epilepsy and epileptic syndromes with complex partial seizures, intractable, with status epilepticus (10F/4 and 11F/57)." Tr. 20. Exhibit 10F page 4, Tr. 428, is the end of a visit report by Dr. Khalil Husari dated August 7, 2023, and Exhibit 11F page 57, Tr. 485, is an office visit note from Dr. Wabulya dated January 9, 2020, prior to the January 2020 EEG testing. The ALJ states that Plaintiff was hospitalized in September 2019 (citing 11F), that he had unremarkable MRIs and PET scans in 2019 and 2020 and MRIs (citing 6F, 10F, and 11F), and that Plaintiff's neurological functions are intact when he is not experiencing a seizure (citing 10F and 11F). Tr. 20. The ALJ also cites Exhibit 11F pages 10, 12, and 22 to support, respectively, that Plaintiff can repeat digits forward and backward, that he requires limitations on light exertional level work related to climbing and proximity to hazards, and that his "seizure activity makes him a fall risk, and he should avoid any activities that could be dangerous *in the event of a loss of awareness*." Tr. 21 (emphasis added).

The ALJ's statements do not include sufficient discussion about why and how the Plaintiff did not meet Listing 11.02B. Further, the ALJ did not adequately explain how the January 2020 EEG test and results do or do not go toward meeting the requirements articulated in §§ 11.00H1b and 11.00H2 to meet Listing 11.02B. Without adequate discussion on these points, the Court cannot trace the ALJ's reasoning that the record evidence did not support Listing 11.02B, and therefore cannot determine that substantial evidence supported the ALJ's conclusion. See *Michele B. v. Dudek*, No. 6:23-CV-05087-TMC, 2025 WL 2208915, at *5 (D.S.C. Mar. 17, 2025) ("Because the ALJ erroneously determined that certain evidence was *not* present in the record when, in fact, it was, there are gaps in his 'bridge' between the evidence and his conclusions," where ALJ did not mention evidence consistent with the claimant's statements or discuss how that

evidence affected the analysis, including the claimant not responding appropriately to medical staff while undergoing an EEG study.)

In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge